**UNITED STATES of America, Appellee,**

v.

**Olivia MARTINEZ–MARTINEZ, Defendant, Appellant.**

**No. 94–1945.**

United States Court of Appeals, First Circuit.

Heard Sept. 11, 1995.

Decided Nov. 21, 1995.

Zygmunt G. Slominski, Guaynabo, PR, by appointment of the Court, for appellant.

Jose A. Quiles Espinosa, Senior Litigation Counsel, with whom Guillermo Gil, United States Attorney, and Epifanio Morales–Cruz, Assistant United States Attorney, were on brief, for appellee.

Before STAHL, Circuit Judge, CAMPBELL, Senior Circuit Judge, and LYNCH, Circuit Judge.

STAHL, Circuit Judge.

Appellant Olivia Martinez–Martinez ("Martinez") seeks to vacate her conviction on a guilty plea for conspiracy to possess with intent to distribute a controlled substance and illegal use of a communication facility in furtherance of the conspiracy. The United States District Court for the District of Puerto Rico, Raymond L. Acosta, District Judge, accepted Martinez' plea and sentenced her to a prison term of eighty-seven months. In this appeal, Martinez challenges certain procedures at her change of plea hearing, the application of the criminal statutes to her case, and her sentence. Martinez also raises an ineffective-assistance-of-counsel claim. We affirm.

## I.

### Factual Background and Prior Proceedings

The facts pertinent to this appeal are largely undisputed. Government agents arrested Martinez and her codefendants in a "reverse-sting" operation whereby the agents acted as sellers rather than purchasers in a cocaine transaction. Martinez was subsequently indicted under 21 U.S.C. § 846 for conspiracy to possess with intent to distribute a controlled substance ("Count I") and 21 U.S.C. § 843(b) for use of a communication

facility (a telephone) in furtherance of the conspiracy ("Count II").

On May 3, 1994, the first day of trial, the parties negotiated a plea agreement whereby Martinez would plead guilty to an information charging the same violations as the original indictment, but for a smaller amount of cocaine. On the same day, Martinez completed and signed a Petition to Enter a Plea of Guilty ("plea petition"). Although the plea petition was written in both English and Spanish, Martinez completed her answers in Spanish. The very next day, the district court conducted a change of plea hearing. Martinez' attorney forgot to bring the plea petition to the hearing, and filed it later. Before the hearing, the parties filed the plea agreement as well as the Government's Version of the Facts; Martinez signed both English-written documents and, along with her attorney, initialled each page.

During the plea hearing, the district court addressed Martinez through an interpreter. The court simultaneously questioned Martinez and her codefendant (her common law husband) regarding their competence to plead, the constitutional rights waived in entering the pleas, the voluntariness of the pleas, the facts presented by the government, whether they had read and understood the charges, and if they had consulted their counsel about them.

The district court did not read the information or explain the elements of the charged crimes to Martinez and her codefendant. After the government presented its version of the evidence, both defendants agreed to the facts as stated and declined to offer their own versions.

The district court also explained the range of possible penalties provided by law as to each defendant. The parties presented an agreed-upon imprisonment recommendation and discussed at some length an offense-level decrease for acceptance of responsibility. Although the parties agreed to a two-level reduction pursuant to U.S.S.G. § 3E1.1, the government stated it would not oppose an additional one-level reduction "for Bureau of Prisons purposes" if the term of confinement remained the same.[1] The district court registered doubt as to the applicability of the extra reduction, noting that it is specifically awarded for timeliness in accepting responsibility. *See* U.S.S.G. § 3E1.1(b). In response, the government's attorney expressed the opinion that "there might have been a reason for them not to notify me or come to a plea in a more timely fashion." The court then stated that with respect to the additional one-level reduction, "you can pretty well count on it, but you have to remind me at sentencing." Immediately after this exchange, the court secured the defendants' understanding that any sentencing agreement between the parties was not binding on the court but merely a recommendation.[2] After finding that Martinez understood the nature of the charges against her and appreciated the consequences of pleading guilty, the court accepted her guilty plea to Counts I and II.

At Martinez' sentencing on August 9, 1994, the issue of awarding a three-level decrease for acceptance of responsibility was discussed again at some length. Martinez' attorney reminded the court of "the possibility of entertaining the reduction of one [additional level]" but acknowledged that "[a]ccording to the U.S. Attorney, this would be left to the sound discretion of this court." Despite the government's reaffirmation of its acquiescence, the court declined to award the third one-level reduction and indicated that upon further reflection, it found no reason to do so.[3] The court sentenced Martinez to eighty-

---

1. Apparently, although the confinement term could remain the same with the additional one-level reduction, an offense level of twenty-seven instead of twenty-eight would confer an administrative benefit with regard to confinement conditions in the Bureau of Prisons facility.

2. The specific colloquy was as follows:
 THE COURT: ... Mr. Gonzalez, Ms. Martinez, do you understand that any agreement between your attorneys and the Assistant U.S. Attorney is not binding on the Court? That it's a recommendation and that it's up to the Court to finally determine what your sentence will be; do you understand that?
 THE INTERPRETER: Yes to both.

3. Specifically, the district judge stated:
 The court has had the opportunity to read the pre-sentence report and has taken into account the comments by the attorney for the defen-

seven months of imprisonment for Count I, and forty-eight months for Count II, to be served concurrently, based on a total offense level of twenty-eight. This appeal followed.

## II.

### Discussion

On appeal, Martinez argues that: (1) this court should vacate her guilty plea because of defects in the plea proceedings pursuant to Fed.R.Crim.P. 11; (2) the criminal statutes under which she was convicted were unconstitutionally vague as applied; (3) the district court erred in not awarding her a third reduction point for acceptance of responsibility and in failing to depart downwards from the sentencing guidelines; and (4) she was deprived of the effective assistance of counsel.

### A. Rule 11 Plea Proceedings

■ Martinez asks this court to vacate her guilty plea although she never moved to withdraw it in the lower court. While we ordinarily deem waived an issue not raised before the district court, we will determine Rule 11 compliance for the first time on appeal if the record is sufficiently developed. *United States v. Parra–Ibanez,* 936 F.2d 588, 593 (1st Cir.1991).[4] If additional facts must be found, however, a defendant cannot seek relief on direct appeal, but must collaterally attack the Rule 11 proceedings under 28 U.S.C. § 2255. *Parra–Ibanez,* 936 F.2d at 593; *see* Fed.R.Crim.P. 32(e). Here, Martinez challenges the sufficiency of the court's inquiry and instruction during the plea proceedings. The accumulated record before this court, which includes the change of plea hearing transcript, the plea agreement and other formal filings, is sufficiently developed

to allow direct review of the Rule 11 issues Martinez raises.

The extent of the burden Martinez bears in her direct appeal from a guilty plea is somewhat cloudy. In *Parra–Ibanez,* it appeared that a challenge to a guilty plea for the first time on appeal was subject to Rule 11(h)'s "harmless error" rule, *i.e.,* any defect must be disregarded if it does not affect substantial rights. 936 F.2d at 598 & n. 24; Fed.R.Crim.P. 11(h). While the harmless error rule excuses minor and technical violations, it is not intended effectively to nullify Rule 11's express mandates or safeguards. *See United States v. Martinez–Molina,* 64 F.3d 719, 734 (1st Cir.1995) (citing *United States v. Medina–Silverio,* 30 F.3d 1, 4 (1st Cir.1994)); Fed.R.Crim.P. 11(h) advisory committee's note to 1983 amendment.

Subsequent to *Parra–Ibanez,* this Circuit appears to have imposed an additional burden on the direct appellant who failed to challenge the guilty plea in district court: to establish that the Rule 11 violation amounted to "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Japa,* 994 F.2d 899, 902 (1st Cir.1993); *see also United States v. Ferguson,* 60 F.3d 1, 2 (1st Cir.1995) (citing *Japa* ); *United States v. Lopez–Pineda,* 55 F.3d 693, 697 (1st Cir.) (citing *Japa* ), *cert. denied,* —— U.S. ——, 116 S.Ct. 259, —— L.Ed.2d —— (1995); *United States v. Ruiz–del Valle,* 8 F.3d 98, 103–104 (1st Cir.1993) (citing *Japa* ); *United States v. Baker,* 790 F.2d 1437 (9th Cir.1986). Whether this higher standard should apply in a direct appeal case, or whether it should operate only in collateral attacks upon guilty pleas under 28 U.S.C.

dant and the defendant herself and the government[,] and with respect to the three [level] adjustment for acceptance of responsibility, frankly the court hasn't received any justification whatsoever for the elimination of the one [additional level]. As I recall, the defendants were here on the day of trial ..., the jury had been summoned, the government was prepared and ready with their witnesses[,] and the whole purpose of the rule ... [is] specifically to avoid that sort of thin[g] and I believe I haven't been given any reason, none whatsoever to eliminate that and, as a matter of fact, I have every reason not to do it because of the

fact then that the next person that comes up will say, "Judge, for no reason at all you granted the three [level reduction]" and I would then forever more, it is an automatic thing and it doesn't mean anything anymore and I have received no justification whatsoever.

4. Because of Rule 11(g)'s requirement that a trial court make a complete record of the plea proceedings, ordinarily a sufficient record will exist for an appellate court to directly review for Rule 11 compliance. Fed.R.Crim.P. 11(g).

§ 2255, is not without difficulty. *See* Fed. R.Crim.P. 11(h) advisory committee's note to 1983 amendment (noting applicability of higher standard to § 2255 cases (citing *United States v. Timmreck,* 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979))); Fed.R.Crim.P. 32(d) [now 32(e)] advisory committee's note to 1983 amendments (same); *United States v. Cross,* 57 F.3d 588, 590 (7th Cir.1995) (reviewing Rule 11 complaints in direct appeal case for plain error and finding such complaints subject to harmless error analysis), *cert. denied,* —— U.S. ——, 116 S.Ct. 406, —— L.Ed.2d —— (1995); *United States v. Jaramillo–Suarez,* 857 F.2d 1368, 1370 n. 2 (9th Cir.1988) (noting that burden in guilty plea challenge is apparently greater in collateral attacks than on direct appeal).

Having noted the somewhat uncertain status in this Circuit as to the burden a direct appellant must bear when challenging a guilty plea for the first time on appeal, a majority of the panel agrees that this case warrants affirmance under either standard. One panel member believes the error here is not harmless, but would apply the higher standard of review and find that Martinez is unable to satisfy that standard. Because the panel, as a whole, finds that Martinez' Rule 11 challenge fails, definitive resolution of this issue shall await another day.

*1. Defendant's Understanding of the Nature of the Charges*

Martinez contends that the district court erred during the Rule 11 plea proceedings by: failing to read the charges in open court or otherwise explain the elements of the offenses; failing to read the plea petition prior to accepting her guilty plea; addressing her simultaneously with her codefendant; and failing to instruct her that she had no right to withdraw the plea if the court rejected the recommended sentence. Because we find of primary importance Martinez' claim that the court did not sufficiently determine her understanding of the charges, we reach that issue first.

■ Rule 11 of the Federal Rules of Criminal Procedure provides in pertinent part: "Before accepting a plea of guilty ..., the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ... the nature of the charge to which the plea is offered." Fed.R.Crim.P. 11(c). The defendant's understanding of the charges is a "core concern" of Rule 11. *United States v. Allard,* 926 F.2d 1237, 1244–45 (1st Cir.1991); *see Martinez–Molina,* 64 F.3d at 733 (listing other core concerns: absence of coercion and knowledge of guilty plea consequences) (citing *id.*). Rather than exalting form over substance, on appeal we employ a "totality of the circumstances" test to determine if a core violation has indeed occurred. *Id.*

■ Whether the explanation of the charges and determination of the defendant's understanding are sufficient for Rule 11 purposes varies "depending upon the complexity of the charges, the capacity of the defendant, and the attendant circumstances." *United States v. Cotal–Crespo,* 47 F.3d 1, 6 (1st Cir.) (citing *Allard,* 926 F.2d at 1245), *cert. denied,* —— U.S. ——, 116 S.Ct. 94, 133 L.Ed.2d 49 (1995). The description of the charges need not come directly from the court so long as the record reveals that the defendant understood them. *Id.* at 5. If, during the plea colloquy, the government's statement or the defendant's own version of the facts sets forth all elements and conduct of the offense, admission to that conduct sufficiently establishes the defendant's understanding of the charge. *Id.* at 6.

■ This court has recently reaffirmed, however, that a defendant's acknowledgment of signed agreements or other written documents will not suffice in lieu of the court's personal examination. *Martinez–Molina,* 64 F.3d at 734 (citing *Medina–Silverio,* 30 F.3d at 3) (other citations omitted). Furthermore, our analysis on appeal of the defendant's state of mind "[is] undermined in proportion to the degree the district judge resorts to 'assumptions' not based upon recorded responses to his inquiries." *McCarthy v. United States,* 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969).

■ Like Martinez, a defendant in *Cotal–Crespo* was indicted for conspiracy to possess

with intent to distribute multi-kilograms of cocaine and illegal use of a communication facility. 47 F.3d at 3. As in this case, the district court in *Cotal–Crespo* neither read the charges nor explained the relevant law of conspiracy. *Id.* at 5. At the plea hearing in *Cotal–Crespo*, the defendant stated "that he went, together with the other two defendants, to buy the drugs.... [and] admitted to making phone calls with respect to the drug transaction." *Id.* at 6. We found these admissions sufficient to describe the elements of the charges, and further found support in the fact that the defendant assented to the government's version of the facts which also described the requisite elements. *Id.*

Martinez claims that neither the charges nor their elements were sufficiently described during the plea colloquy.[5] At her plea hearing, the government's recital of the evidence—which Martinez both agreed to and declined to modify—included the following:

> [B]etween 14 May of 1993 and June 22 of 1993, co-defendants Tomas Gonzalez Chacon [appellant's common law husband] and Olivia Martinez Martinez participated in a conspiracy to purchase multi kilos quantities of the controlled substance cocaine.
>
> In the course of this approximately one month and a half, Your Honor, there was diverse [sic] calls that were made between agents and the defendants or defendants and the agents. And in fact, one of these calls with regard to Olivia Martinez Martinez was charged in violation of [21 U.S.C. § ] 843(b)....
>
> ....
>
> This month and a half of negotiations concluded at the Santa Rosa Shopping Center in Bayamon on June 22, 1993. On that date the co-defendants, along with another two persons, appeared at the Santa Rosa Shopping Center. To forward the

purposes of the conspiracy they displayed an amount of money which later turned out to be in excess of eighty-seven thousand dollars.

> At that point in time, Your Honor, the purposes of the conspiracy having been completed, the agents of the United States and the Police of Puerto Rico proceeded to arrest [Chacon and Martinez] as well as another two co-defendants.

This description clearly establishes an agreement to buy a large amount of cocaine and a telephone call made pursuant to that agreement. Although these facts came from the government and not Martinez, we find this description in open court—confirmed by Martinez—sufficient to describe the elements of the charges, within the holding of *Cotal–Crespo*. *See* 47 F.3d at 5.[6]

Martinez insists that the plea colloquy failed to reflect two crucial aspects of the conspiracy charge: (1) that the conspiracy took place between codefendants rather than between Martinez and government agents; and (2) that the conspiracy was for possession with intent to distribute rather than merely to purchase. We disagree. As to the first, Martinez is plainly wrong because the government's recital clearly implicated Martinez and her husband as participants in the conspiracy. As to the second, we reiterate that the facts presented by the government are nearly identical to the defendant's statements in *Cotal–Crespo* which were found sufficient to describe the elements of a conspiracy to possess with intent to distribute. *See id.* Moreover, Martinez acknowledged twice during the plea hearing that she had discussed the charges—which included the conspiracy to possess with intent to distribute—with her counsel and understood them. "[W]hile the subtleties of conspiracy law may be the bane of criminal law students, the basic principle is easily understood: a group of people agreeing to do something illegal."

---

**5.** Martinez claims that the failure to read the charges at the plea hearing is a violation of Fed.R.Crim.P. 10. Because Rule 10 sets forth procedures for arraignment rather than plea proceedings, this argument is misplaced here under Rule 10 rubric. We will, however, consider it in the context of Rule 11.

**6.** This undisputed recital of facts also reveals the lack of merit to Martinez' additional claim that the court failed to ensure a factual basis for the plea in derogation of Fed.R.Crim.P. 11(f).

*United States v. Carter,* 815 F.2d 827, 829 (1st Cir.1987), *quoted in Cotal–Crespo,* 47 F.3d at 6. We find nothing in the record that hints of Martinez' claimed misunderstanding of the conspiracy charge.

In addition to the circumstances of the plea colloquy, we consider as relevant under the totality of circumstances test those factors a district court would consider had defendant moved to withdraw her plea in district court: (1) the force and plausibility of the proffered reason; (2) the timing of the request; (3) whether the defendant asserts legal innocence; and (4) whether the parties reached a plea agreement. *See Cotal–Crespo,* 47 F.3d at 3–4, 8. Martinez did not agree to plead guilty until the day of trial and after months of trial preparation, thus casting doubt on her claim of ignorance as to the nature of the charges. Because Martinez did not attempt to withdraw her plea in district court, the timing factor militates against her. *Accord id.* at 8 (noting defendants' two-month delay before deciding consequences of plea were not understood). Martinez does not assert her legal innocence and she had entered into a counseled plea agreement. Applying these four factors to this case, we find that the totality of circumstances is against Martinez.

Although the above analysis sufficiently supports the disposition of this issue, we consider the following to be relevant: the plea agreement states that "codefendant Olivia Martinez Martinez conspired to possess 4.5 kilograms of cocaine"; the government's written version of the facts (signed by Martinez) states that "Martinez and other codefendants participated in a conspiracy for the purchase of multi kilo quantities of cocaine" and "Martinez acknowledges that she knowingly, intentionally, and unlawfully participated in the conspiracy to possess, with intent to distribute ... cocaine"; and Martinez' trial counsel certified in the plea peti-

tion that he read and fully explained the charges and all elements of the offenses and that, in his opinion, Martinez understood his explanations.[7] Review of these documents, all signed by Martinez, conclusively tips the scales of the totality-of-the-circumstances test against Martinez.

■ We candidly acknowledge that the district court's plea colloquy stretched the outer boundaries of Rule 11's express mandate that the court both inform the defendant of the charges and determine the defendant's understanding of them. Here, the district court neither read the charges nor discussed their elements with Martinez. However, "[a]n appellate court must read the transcript of a Rule 11 colloquy with practical wisdom as opposed to pettifoggery." *United States v. Piper,* 35 F.3d 611, 614 (1st Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1118, 130 L.Ed.2d 1082 (1995). After careful review of the record and consideration of the totality of the circumstances, we uphold the district court's finding that Martinez understood the nature of the charges brought against her.

### 2. Other Rule 11 Issues

■ Martinez' remaining arguments challenging the Rule 11 proceedings may be resolved with relative dispatch. First, Martinez claims that the court's failure to review her plea petition prior to accepting her plea amounts to reversible error. Our review of Martinez' plea petition, however, reveals nothing that was not discussed in more detail during the plea hearing.[8] Given that a plea petition was prepared and executed, it would have been preferable that the district court review the statements prior to acceptance of Martinez' plea. Nonetheless, we find this sequence here to be harmless error not affecting substantial rights.

---

7. Of course, a trial court in Rule 11 proceedings may not solely rely on acknowledged documents in lieu of personal discussion with the defendant. *Cotal–Crespo,* 47 F.3d at 8. On review, however, we may look to such documents along with the plea colloquy transcript to determine if, under the totality of the circumstances, a Rule 11 core violation has occurred.

8. Martinez argues that her vague description in the plea petition of the acts constituting her crimes would have put the district court on notice that she did not understand the charges. As explained above, however, the government's later recital of the evidence at the plea hearing sufficiently described the conduct constituting her offenses.

Second, Martinez contends that Rule 11's directive that the court "personally" address the defendant is never complied with when the court questions codefendants simultaneously. Martinez cites no cases, however, and our research reveals none, for the proposition that "personally" is synonymous with "individually" under Rule 11. *See United States v. Hobson,* 686 F.2d 628, 629 (8th Cir.1982) (questioning defendants as a group permissible where responses were individual); *United States v. Fels,* 599 F.2d 142, 146 (7th Cir.1979) (finding no reversible error in group-questioning); *United States v. Laura,* 500 F.Supp. 1347, 1353–54 (E.D.Pa. 1980) (same), *aff'd,* 667 F.2d 365 (3d Cir. 1981). Accordingly, we decline to hold that failure to address a defendant individually is *per se* reversible error. More specifically, we do not think that, on the facts of this case, the district court's failure to address Martinez individually requires reversal.

We do express reservation, however, at the district court's use of simultaneous colloquy, especially here when the aid of a language interpreter was necessary. Group-questioning not only increases the risk that individual defendants will not fully comprehend the court's inquiries, but it also makes determinations about a defendant's state of mind more difficult. *Accord Fels,* 599 F.2d at 146. We reiterate our recent observation in *Medina–Silverio:*

> We well understand the heavy burdens imposed on the district courts. Yet no matter how repetitive the required Rule 11 praxis may become for busy district judges, it may not be presumed so for the defendant; and however time-consuming for the court, it is surely less so than the virtually certain prospect of remand for further Rule 11 proceedings or trial.

30 F.3d at 3.

Third, Martinez argues in a conclusory fashion that the district court failed to inquire personally and completely as to the voluntariness of her plea, in derogation of Rule 11(d). Review of the transcript, however, indicates that the court specifically questioned both Martinez and her codefendant on this issue. The court first asked, "Now, has any person used any threats, promise, prom-ises of probation or any force against you in order to make you plead guilty? Either one of you?" To this question, Martinez and her codefendant individually answered "No" through the interpreter. The court then followed-up, "I take it that both of you are making this plea voluntarily and of your own free will; is that correct?", to which each answered "Yes" through the interpreter. Because of this exchange, we are satisfied that Rule 11(d)'s primary goal of ensuring the voluntariness of the plea was met.

Furthermore, immediately after the above exchange, the district court heard the substance of the plea agreement from the government's attorney. Therefore, Rule 11(d)'s secondary goal of disclosing to the court the substance of any plea agreement was also met here. *See* Fed.R.Crim.P. 11(d) advisory committee's note to 1974 amendment. In sum, we are satisfied that the court's specific inquiries about the voluntariness of the plea, even though made to the defendants simultaneously, were sufficiently clear and explicit to satisfy Rule 11(d)'s requirements such that we find no reversible error.

Finally, Martinez argues that the court should have advised her that if it did not accept the sentence recommendation or request, she nevertheless had no right to withdraw her plea. Because the district court did comply with the government's recommendation as to confinement term, we must presume that Martinez complains of the court's refusal to award the additional one-level adjustment for acceptance of responsibility. Martinez is correct that the district court did not explicitly advise her that she could not withdraw her plea should it reject her request. Rule 11 requires this instruction where, as here, the plea agreement includes the government's sentencing recommendation—or agreement not to oppose defendant's sentencing request—with the understanding that it is not binding upon the court. *See* Fed.R.Crim.P. 11(e)(1)(B) & 11(e)(2).

The purpose of this requirement, however, is to impress upon a defendant the nonbinding nature of a sentencing recommendation or request. *See* Fed.R.Crim.P. 11(e)(2) advisory committee's note to 1979 amendment. As noted above, immediately after

discussing the possibility of the extra one-level reduction, the court personally ensured that Martinez understood the non-binding nature of the recommendation. *See supra,* note 2. The court's inquiry at that point in the colloquy was sufficient to meet the advisement requirements of Rule 11(e)(2). Moreover, because the court gave this warning immediately after it said Martinez could "pretty well count on [the additional one-level decrease]," we find any inducement to plead guilty stemming from those words insufficient to affect Martinez' substantial rights.

### B. *Vagueness*

■ On appeal, Martinez argues that criminal statutes 21 U.S.C. §§ 841 and 846 as applied to her case are vague and invite arbitrary and discriminatory enforcement. Specifically, Martinez contends that because there were no drugs present during the reverse-sting operation, there was no danger of actual possession. Thus, Martinez argues, she was essentially convicted of only "an attempt to conspire to possess with intent to distribute," which is not a crime. Martinez further claims that the government runs reverse-sting operations in an arbitrary and discriminatory manner because it controls the quantity and price of the illegal substance.

■ We need not reach the merits of these contentions [9] because a valid guilty plea waives all challenges to the factual and legal foundations of the charges. *Valencia v. United States,* 923 F.2d 917, 920 (1st Cir.

1991); *see also United States v. Broce,* 488 U.S. 563, 589, 109 S.Ct. 757, 772, 102 L.Ed.2d 927 (1989); *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973); *United States v. Cordero,* 42 F.3d 697, 698–99 (1st Cir.1994); *United States v. Rivera Ramos,* 856 F.2d 420, 423 (1st Cir. 1988), *cert. denied,* 493 U.S. 837, 110 S.Ct. 118, 107 L.Ed.2d 79 (1989). Indeed, the reason why a defendant must understand the nature of the charges is that a guilty plea admits guilt to the substantive crime as well as to the conduct alleged. *See Broce,* 488 U.S. at 570, 109 S.Ct. at 762. Only if the claimed error concerns the court's jurisdiction does the rule of waiver not apply.[10] *Cordero,* 42 F.3d at 699 (citing cases). Because we find that Martinez entered into a valid, counseled and voluntary guilty plea, she may not challenge on vagueness grounds the application of the relevant criminal statutes to her case.

### C. *Sentencing*

■ We review factbound matters in sentencing for clear error, mindful that such factual findings need only be supported by a preponderance of the evidence. *United States v. Andujar,* 49 F.3d 16, 25 (1st Cir. 1995). Questions of law, including the applicability of a relevant guideline, are reviewed *de novo. United States v. St. Cyr,* 977 F.2d 698, 701 (1st Cir.1992).

Martinez claims error in the court's rejection of her request for a third one-level reduction for acceptance of responsibility. The

---

9. We note, however, that a defendant may be convicted of conspiring to possess with intent to distribute a controlled substance even if government agents never had cocaine to sell. *See United States v. Davis,* 960 F.2d 820, 828 (9th Cir.) (noting that "[a] criminal conspiracy may be established 'regardless of whether the crime agreed upon is actually committed.'") (quoting *United States v. Feola,* 420 U.S. 671, 694, 95 S.Ct. 1255, 1268, 43 L.Ed.2d 541 (1975)), *cert. denied,* —— U.S. ——, 113 S.Ct. 210, 121 L.Ed.2d 150 (1992).

10. Martinez attempts to bring her argument within this exception by again attacking the underlying facts of her conviction and factual findings regarding the elements of the charges. These contentions, resolved above, simply do not speak to the district court's jurisdiction, *i.e.,* its

power to hear the case. *See Cordero,* 42 F.3d at 699 (finding that challenges to weight or sufficiency of evidence are not jurisdictional defects within the meaning of the exception). Thus, we need not specifically hold that challenges to "jurisdictional facts" also fall within the waiver rule. *See Valencia,* 923 F.2d at 921 (assuming *arguendo* that a guilty plea also admits to allegations forming "the factual predicate for federal jurisdiction"). Martinez' only contention implicating the court's jurisdiction is perhaps her brief reference to the impossibility of the "movement of drugs in either interstate or intrastate commerce." However, "[b]ecause this allusion is not accompanied by any developed argumentation, we deem it waived." *Piper,* 35 F.3d at 620 n. 7 (citing *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990)).

Sentencing Guidelines provide for a third offense level decrease for acceptance of responsibility if the defendant, *inter alia*, timely provides information to the government or timely notifies it of the intent to plead guilty. U.S.S.G. § 3E1.1(b). Whether or not a defendant timely accepts responsibility is a fact-specific question. *See* U.S.S.G. § 3E1.1(b), comment. (n. 6).

 Martinez contends that the district court should have upheld its earlier statement that she could "pretty well count on [the additional one-level decrease]" and claims that no new factors were raised before sentencing to justify the court's change of mind. Our review of the court's statements at sentencing shows that the court had further time to reflect, read the pre-sentence report, and deemed it unwise policy to award automatically the extra decrease when the timeliness element was so utterly lacking. *See supra* note 3 (noting that Martinez did not plead guilty until the day of trial, after the jury was summoned and the government had prepared its case). There is no error in the district court's ultimate decision.

 On appeal, Martinez argues for the first time that the district court should have departed downwards from the sentencing guidelines pursuant to U.S.S.G. § 2D1.1, comment. (n. 17), which permits such departure in reverse-sting operations if the government set a substantially below-market price for the drugs. We note first that "arguments not squarely presented to the sentencing court cannot debut as of right in an appellate venue" and thus the issue is deemed waived. *Piper,* 35 F.3d at 620 n. 6 (citations omitted). In any event, even if Martinez had sought a departure on this basis from the district court, we would be without jurisdiction to review the discretionary decision not to grant that request. *See United States v. Morrison,* 46 F.3d 127, 130 (1st Cir.1995); *United States v. Pierro,* 32 F.3d 611, 619 (1st Cir.1994), *cert. denied,* ─── U.S. ───, 115 S.Ct. 919, 130 L.Ed.2d 799 (1995). Thus, we decline to consider this argument.

### D. *Ineffective Assistance of Counsel*

Martinez' final challenge is that she was deprived of the effective assistance of counsel because her trial counsel failed to raise the vagueness and jurisdictional issues noted above, question Rule 11 compliance in the plea proceedings, remind the court of its "promise" to award the extra point reduction in sentencing, or raise mitigating facts in support of a downward departure from the sentencing guidelines.

 This court will ordinarily not entertain an ineffective-assistance-of-counsel claim on direct appeal unless the record is sufficiently developed. *See United States v. Mala,* 7 F.3d 1058, 1063 (1st Cir.1993), *cert. denied,* ─── U.S. ───, 114 S.Ct. 1839, 128 L.Ed.2d 466 (1994). Instead, such a claim must be brought collaterally under 28 U.S.C. § 2255. *United States v. Daniels,* 3 F.3d 25, 27 (1st Cir.1993). Unlike Martinez' Rule 11 challenges, her ineffective assistance claim implicates facts outside of the record for which there is no developed argument on the merits. Thus, we decline to entertain Martinez' ineffective assistance claim on direct appeal.

### III.

#### Conclusion

In conclusion, we find it appropriate to repeat our recent admonition in *Cotal-Crespo:*

In 1968, the Supreme Court explained that Rule 11 was designed, at least in part, to produce a complete record to enable reviewing courts to determine, based on a cold transcript, whether a plea was voluntary. The Court thus commented that:

[T]he more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

*McCarthy,* 394 U.S. at 465, 89 S.Ct. at 1170. Although we conclude that the Rule 11 hearing in this case was adequate, we are nevertheless compelled to remind district courts that, for the sake of judicial economy and fundamental fairness, the

best way to ensure that Rule 11 is complied with is to explicitly comply with Rule 11.

47 F.3d at 8.

The judgment of the district court is *affirmed.*