<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

     [NOT FOR PUBLICATION   NOT TO BE CITED AS PRECEDENT]
                                
                United States Court of Appeals
                    For the First Circuit

No. 97-1422

                   UNITED STATES OF AMERICA,
                           Appellee,

                               v.

                      OSVALDO DIAZ-PABON,
                     Defendant, Appellant.

No. 97-1423

                   UNITED STATES OF AMERICA,
                           Appellee,

                               v.

                     ANTONIO CRUZ-ARBOLEDA,
                     Defendant, Appellant.
                                 

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Juan M. Perez-Gimenez, U.S. District Judge]

                                           

                             Before

           Selya, Boudin and Lipez, Circuit Judges.
                                
                                

    Rafael F. Castro Lang for appellant Diaz-Pabon.
    Eric M. Quetglas Jordan for appellant Cruz-Arboleda.
    Mark Irish, Assistant United States Attorney, with whom
Guillermo Gil, United States Attorney, Jos A. Quiles-Espinosa,
Senior Litigation Counsel, Camille Vlez-Riv, Assistant United
States Attorney, and Nelson Prez-Sosa, Assistant United States
Attorney, were on brief,for appellee.    

AUGUST 20, 1998

 LIPEZ, Circuit Judge.  Appellants Osvaldo Diaz-Pabon and
Antonio Cruz-Arboleda were convicted by a jury of federal offenses
stemming from two carjackings and a murder in Puerto Rico, all
occurring in 1995.  Challenging the constitutionality and scope of
the Anti-Car Theft Act of 1992, 18 U.S.C.  2119, and the refusal
of the district court to remove for cause a prospective juror
during voir dire, appellants seek to vacate their convictions.  
Appellant Diaz-Pabon also appeals his life sentence.  We affirm.
                              I.
 On October 31, 1995, Carlos Ruben Rivera-Aponte, Osvaldo
Diaz-Pabon, and Antonio Cruz-Arboleda met at Rivera-Aponte's
apartment, where they hatched a plan to carjack a pharmaceutical
delivery truck owned by the J.M. Blanco Company.  The three men
left the apartment in Diaz-Pabon's car, expecting to intercept the
delivery truck on its regular route.  After observing the delivery
truck stopped at a red light, Cruz-Arboleda exited Diaz-Pabon's car
and entered the passenger side of the delivery truck with a
firearm.  As Rivera-Aponte and Diaz-Pabon followed in the car,
Cruz-Arboleda and the J.M. Blanco driver continued traveling in the
delivery truck. After stopping briefly on the side of the road to
allow Diaz-Pabon to join Cruz-Arboleda in the delivery truck, the
two vehicles traveled some distance farther and eventually came to
a stop.  Diaz-Pabon and Cruz-Arboleda exited the delivery truck
with the driver's personal belongings and money, joined Rivera-
Aponte in the car, and returned to Rivera-Aponte's apartment.   
 On November 28, 1995, the trio committed a second
carjacking of a J.M. Blanco Company delivery truck.  On this date,
Diaz-Pabon, Cruz-Arboleda, and Rivera-Aponte once again gathered at
Rivera-Aponte's apartment.  According to Rivera-Aponte's testimony
at trial, they agreed to go target-shooting together.  As the three
men proceeded to the target-shooting location in a station wagon
that had been rented by Diaz-Pabon, they observed a J.M. Blanco
Company delivery truck stopped at a red light.  After the men
followed the delivery truck in the station wagon for some distance,
Cruz-Arboleda exited the station wagon and entered the delivery
truck with a firearm.  
 As Rivera-Aponte and Diaz-Pabon followed in the station
wagon, Cruz-Arboleda and the J.M. Blanco driver continued traveling
in the delivery truck. After stopping briefly twice   once to allow
Rivera-Aponte to join Cruz-Arboleda in the delivery truck    the
two vehicles continued traveling.  Eventually both vehicles stopped
along the roadside.  Diaz-Pabon, who was still driving the station
wagon, informed Rivera-Aponte that a third vehicle was approaching,
and that he would continue driving the station wagon and turn
around to pick up Rivera-Aponte and Cruz-Arboleda shortly.  
 As Rivera-Aponte left the delivery truck to meet Diaz-
Pabon, he heard several gunshots.  Returning to the delivery truck,
Rivera-Aponte observed the fatally wounded driver lying on the
floor of the truck and Cruz-Arboleda gathering money and the
driver's personal belongings.  Shortly thereafter, Diaz-Pabon
arrived in the station wagon to retrieve Rivera-Aponte and Cruz-
Arboleda as agreed.  Following an argument between Rivera-Aponte
and Cruz-Arboleda about why Cruz-Arboleda had shot the driver, the
trio left the scene and returned to Rivera-Aponte's apartment.  
 On January 31, 1996, Rivera-Aponte, Cruz-Arboleda, and
Diaz-Pabon each were charged by indictment with two counts of
carjacking in violation of the Anti-Car Theft Act of 1992, 18
U.S.C.  2119, and two counts of using or carrying a firearm during
a crime of violence in violation of 18 U.S.C.  924(c)(1).  The
indictments charged aiding and abetting in addition to direct
participation. See 18 U.S.C.  2. The government secured the
cooperation of Rivera-Aponte, who entered into a plea agreement and
testified at the trial of Cruz-Arboleda and Diaz-Pabon. Both men
were found guilty on all counts.
                             II.
 Citing United States v. Lopez, 514 U.S. 549 (1995), Diaz-
Pabon and Cruz-Arboleda contend that 18 U.S.C.  2119, the federal
carjacking statute pursuant to which they were convicted, was not
a valid exercise of congressional power under the Commerce Clause.  
We recently rejected an identical facial challenge to section 2119
in United States v. Rivera-Figueroa, Nos. 96-1112, 1290-92, 1998 WL
215809 (1st Cir. May 5, 1998), in which we joined at least seven
other circuits by upholding the constitutionality of the statute.  
We decline to revisit the issue.  
    Diaz-Pabon and Cruz-Arboleda also challenge the
constitutionality of section 2119 as applied.  Maintaining that
Lopez requires the government to prove that the carjacked vehicles
in question had a "substantial effect" on interstate commerce,  
appellants contend that the government's evidence   specifically,
that the carjacked vehicles were shipped to Puerto Rico from Florida
in 1990 and 1991   was insufficient to meet this heightened showing.  
Contrary to appellants' premise, however, Lopez did not revise the
government's burden of proof on a jurisdictional element in criminal
statutes.  Instead, it "identif[ied] the extent to which purely
intrastate activities must impact interstate commerce before
Congress may legislate under the Commerce Clause."  United Statesv. Cardoza, 129 F.3d 6, 11 (1st Cir. 1997).  Unlike the statute at
issue in Lopez, section 2119 contains an express jurisdictional
element requiring evidence that a carjacked vehicle was
"transported, shipped, or received in interstate or foreign
commerce." 18 U.S.C.  2119.  Satisfaction of this jurisdictional
element ensures the requisite minimal nexus with interstate commerce
required by the Commerce Clause. See Cardoza, 129 F.3d at 11 (citing
Scarborough v. United States, 431 U.S. 563 (1977)). The government
presented undisputed evidence that the carjacked vehicles had been
shipped in interstate commerce, and appellants' as-applied challenge
to section 2119 must fail.   
    Diaz-Pabon and Cruz-Arboleda also contend that the
government failed to present sufficient evidence to prove the
"taking" element of section 2119.  See 18 U.S.C.  2119 ("Whoever,
with the intent to cause death or serious bodily harm takes a motor
vehicle . . . .").  They maintain that the evidence presented by the
government established only that they temporarily deprived the
victims of the motor vehicles for the sole purpose of stealing money
and other valuables contained in the motor vehicles.  They contend
such evidence does not satisfy section 2119's taking element.  We
disagree.  An intent to deprive the victim permanently of a motor
vehicle is not required by the taking element, see United States v.
Payne, 83 F.3d 346, 347 (10th Cir. 1996); United States v. Moore, 73
F.3d 666, 668 (6th Cir. 1996), cert. denied, 517 U.S. 1228 (1996),
nor is a defendant's motive in taking a motor vehicle relevant to
section 2119, see Payne, 83 F.3d at 347; Moore, 73 F.3d at 668;
United States v. Harris, 25 F.3d 1275, 1279 (5th Cir. 1994).  Viewed
in the light most favorable to the government, see Jackson v.
Virginia, 443 U.S. 307, 319 (1979), the evidence was sufficient.
                             III.
    Diaz-Pabon and Cruz-Arboleda next argue that the district
court's erroneous refusal to strike for cause a prospective juror
was reversible error because it unfairly forced them to expend one
of their ten peremptory challenges, all of which were exercised.  
Although restricting a defendant's use of the lawful number of
peremptory challenges is reversible error if a challenge for cause
is erroneously denied, see United States v. Cambara, 902 F.2d 144,
147-48 (1st Cir. 1990)(citing United States v. Rucker, 557 F.2d
1046, 1048-49 (4th Cir. 1977)), we must first determine whether the
district court erred in failing to remove the prospective juror for
cause.  
    A district court's ruling on for-cause challenges to
prospective jurors is reviewed for a clear abuse of discretion.  SeeUnited States v. Gonzalez-Soberal, 109 F.3d 64, 69-70 (1st Cir.
1997); United States v. Bartelho, 71 F.3d 436, 442 (1st Cir. 1995).  
"There are few aspects of a jury trial where we would be less
inclined to disturb a trial judge's exercise of discretion, absent
clear abuse, than in ruling on challenges for cause in the
empaneling of a jury."  Gonzalez-Soberal, 109 F.3d at 69-70 (quoting
United States v. McCarthy, 961 F.2d 972, 976 (1st Cir. 1992)).   
    During the voir dire examination, the district court
asked whether any of the prospective jurors or any of the
prospective jurors' family members or close personal friends worked
or had ever worked for J.M. Blanco Company.  Juror #30, the
prospective juror at issue, stated that J.M. Blanco Company was a
customer of a company with which he worked, and that he had good
friends who worked for J.M. Blanco.  The court then asked juror #30
whether he had been aware of the 1995 carjackings and murder before
arriving at court for jury duty.  He responded that he had not.  
Later in the voir dire examination, the court asked the entire juror
pool whether any one would be unable or unwilling to render a fair
and impartial verdict. None of the prospective jurors, including
juror #30, responded affirmatively. The court declined to strike for
cause juror #30, noting that although he stated that he had friends
at J.M. Blanco Company, he nonetheless had not even heard of the
1995 carjackings and murder.  Diaz-Pabon and Cruz-Arboleda jointly
exercised one of their ten peremptory challenges to remove juror
#30.       
    Although Diaz-Pabon and Cruz-Arboleda complain that the
court failed to examine in sufficient depth the nature of juror
#30's prior connection with the J.M. Blanco Company, they did not
request any follow-up questions to expand the scope of inquiry
concerning juror #30's potential bias.  Moreover, juror #30 did not
know the murder victim or any members of the victim's family.  He
had no awareness of the carjackings and murder before being summoned
for jury duty.  Juror #30 indicated, as did the rest of the juror
pool, that he would be able and willing to render a fair and
impartial verdict.  In these circumstances, the court acted well
within the bounds of its discretion by refusing to remove for cause
juror #30.              
    Because the district court did not abuse its discretion
in ruling on the for-cause challenge, we do not have to address
Diaz-Pabon and Cruz-Arboleda's contention that their joint use of
a peremptory challenge to remove the prospective juror at issue
mandates reversal.  See United States v. Lowe, 145 F.3d 45, 49 (1stCir. 1998).
                             IV.  
    Diaz-Pabon argues for the first time on appeal that the
sentencing court should have departed downwards from the sentencing
guidelines pursuant to U.S.S.G.  2A1.1's Application Note 1. In
imposing Diaz-Pabon's life sentence, the court applied section
2A1.1, the first-degree murder guideline.  Section 2A1.1 applies to,
inter alia, the sentencing of perpetrators of certain felonies in
which death resulted. See U.S.S.G.  2A1.1 comment. (n.1); see alsoid.  2B3.1(c). Application Note 1 of section 2A1.1 states, however,
that "[l]ife imprisonment is not necessarily appropriate in all
situations," and that "[i]f the defendant did not cause the death
intentionally or knowingly, a downward departure may be warranted.
. . ."  Id.  2A1.1 comment. (n.1).  Relying on the preceding
provision from Application Note 1, Diaz-Pabon argues that the
evidence established that he did not intentionally cause the
delivery truck driver's death, and the sentencing court therefore
should have departed downwards from section 2A1.1's guideline of
life imprisonment.          
    Although the government contends that the district court
did consider section 2A1.1's application note when sentencing Diaz-
Pabon, we find that the record is ambiguous on this point.  It is
clear, however, that Diaz-Pabon never asked the court to consider
a downward departure pursuant to the application note. "[A]rguments
not squarely presented to the sentencing court cannot debut as of
right in an appellate venue," United States v. Martinez-Martinez,
69 F.3d 1215, 1225 (1st Cir. 1995) (quoting United States v. Piper,
35 F.3d 611, 620 n.6 (1st Cir. 1994)), cert. denied, 517 U.S. 1115
(1996), and Diaz-Pabon's unpreserved legal claim is deemed waived.
See id.     
    Even if Diaz-Pabon had sought a departure in the district
court on the basis of section 2A1.1's application note, we would be
without jurisdiction to review the court's discretionary decision
to reject that request.  See id.; 18 U.S.C.  3742(e),(f). An
appellate court generally lacks jurisdiction to review a sentencing
court's discretionary decision not to depart below the guideline
sentencing range. See United States v. Mangos, 134 F.3d 460, 465
(1st Cir. 1998).  There is an exception to this general rule when
the decision not to depart is based on the sentencing court's
erroneous belief that it lacks the authority to depart.  See id.  
There is nothing in the record, however, to suggest that the
sentencing court believed that it lacked the authority to depart.
To the contrary, the court stated at the sentencing hearing that it
"consider[ed] the fact that this defendant did not do the actual
shooting," but that it nonetheless believed a life sentence was
appropriate.  In these circumstances, we are without jurisdiction
to review the court's discretionary decision not to depart from the
sentencing guidelines.   
    Diaz-Pabon seeks to avoid the statutory limitations on
our jurisdiction by contending that the sentencing court
"incorrectly applied" the guidelines.  See 18 U.S.C.  3742(e)(2)
(authorizing a court of appeals to review a sentence which was
"imposed as a result of an incorrect application of the sentencing
guidelines").  He relies on the following provision set forth in
Application Note 1:
    If the defendant did not cause the death
    intentionally or knowingly, a downward
    departure may be warranted.  The extent of the
    departure should be based on the defendant's
    state of mind (e.g., recklessness or
    negligence), the degree of risk inherent in
    the conduct, and the nature of the underlying
    offense conduct. . . .

U.S.S.G.  2A1.1 comment. (n.1)(emphasis added). This provision, he
contends, requires the sentencing court to engage in an analysis of
the factors listed therein when imposing a sentence for a death that
was caused unintentionally or unknowingly, and that the sentencing
court's failure to do so expressly constituted a misapplication of
the guidelines.  We do not agree.  The provision at issue simply
directs that the extent of a departure   not the decision to depart
itself    should be guided by factors listed therein. The sentencing
court was under no duty to analyze the factors set forth in
Application Note 1 to justify its discretionary decision not to
depart from the guidelines, and we find no merit in Diaz-Pabon's
contention that the court applied the guidelines incorrectly.  
                              V.
    Finally, Diaz-Pabon contends that he was deprived of the
effective assistance of counsel during the sentencing phase of his
trial because his trial counsel did not ask the court to consider
a downward departure on the basis of U.S.S.G.  2A1.1's Application
Note 1. We will not consider an ineffective assistance of counsel
claim on direct appeal unless the record is sufficiently developed
to permit review of the claim.  See Martinez-Martinez, 69 F.3d at
1225.  The proper route for such claims is through a collateral
proceeding in district court pursuant to 28 U.S.C.  2255. Such a
proceeding permits the development of the evidentiary record usually
required by ineffective assistance of counsel claims.  See United
States v. Caggiano, 899 F.2d 99, 100 (1st Cir. 1990).  Diaz-Pabon's
ineffective assistance of counsel claim implicates matters beyond
the record in this proceeding.   We decline to consider the claim
on direct appeal.  See Martinez-Martinez, 69 F.3d at 1225.   
    The judgments of the district court are affirmed.

</body>

</html>