DeMOSS, Circuit Judge:
Encarnación Lujano-Perez, Antonio Mata-Ortiz, Juan Torres-Rodriguez, and Jose Efrain Garcia-Luna, all Mexican natives and citizens, pleaded guilty to reentering the United States after deportation under 8 U.S.C. § 1326. They each received enhanced sentences because they had each been convicted of an aggravated felony prior to their deportation. 8 U.S.C. § 1326(b). All four here now challenge the voluntariness of their guilty pleas because the trial court did not comply with the admonishment requirements of Fed. R.CRIM.P. 11. Because we conclude that the trial court’s failure to admonish the defendants of the nature of the charge, as required by Rule 11, was not harmless error, we vacate the conviction and sentence of each defendant and remand these cases for further proceedings consistent with this opinion.
I. BACKGROUND
Encarnación Lujano-Perez was deported on April 29, 1999. Without the Attorney General’s permission, he reentered the United States on May 2, 1999. Border Patrol agents arrested him in Laredo, Texas, on March 30, 2000, and he was indicted for unlawful reentry on April 18, 2000. Prior to this deportation, Lujano-Perez had been convicted in Florida for Attempted Sexual Battery of a Child.
Antonio Mata-Ortiz was deported on October 12, 1999. Without the Attorney General’s permission, he reentered the United States. Border Patrol agents arrested him in Laredo, Texas, on March 26, 2000, and he was indicted for unlawful reentry on April 18, 2000. Prior to his deportation, Mata-Ortiz had been convicted in Denton, Texas, for Aggravated Assault and Murder.
Juan Torres-Rodriguez was deported on June 24, 1999. Without the Attorney General’s permission, he reentered the United States on March 29, 2000. Border Patrol agents arrested him in Laredo, Texas, on March 29, 2000, and he was indicted for unlawful reentry on April, 18, 2000. Prior to his deportation, Torres-Rodriguez had been convicted in Palm Beach, Florida, for Cocaine Possession.
Jose Efrain Garcia-Luna was deported on February 12, 2000. Without the Attorney General’s permission, he reentered the United States. Border Patrol agents arrested him in El Cenizo, Texas, and he was indicted for unlawful reentry on April 4, 2000. Prior to his deportation, Garcia-Luna had been convicted in Chicago, Illinois, for Delivery of a Controlled Substance.
All four defendants pleaded guilty to violating 8 U.S.C. § 1326(b)’s prohibition on reentering the United States after deportation without permission from the Attorney General. Garcia-Luna was found guilty at a hearing before the district court on May 22, 2000. The other three defendants, Lujano-Perez, Mata-Ortiz, and Torres-Rodriguez, were found guilty at a *222 hearing before the same district court on May 23, 2000.
The defendants each appeal here, arguing that their pleas were rendered involuntary by the district court’s failure, at their rearraignment hearings, to properly admonish them of their rights as Rule 11 requires. The government concedes that Rule 11 was not complied with, but nonetheless urges us to affirm the defendants’ convictions because the district court’s de-" viation from the rule amounted to harmless error.

1. The May 22 Hearing

On May 22, 2000, Garcia-Luna, along with five other defendants unrelated to this case, appeared and participated in a rearraignment hearing before the district court. The judge began by addressing the whole group. First, he told the group that if they could not understand the proceedings, they needed to let him know because silence would be interpreted as understanding.
While still addressing the entire group, the judge then confirmed that (1) the defendants wished to plead guilty; (2) the defendants understood they were under oath; (3) the defendants’ pleas were not the result of threats or coercion; (4) the defendants had not taken drugs or alcohol within the prior 24 hours; (5) the defendants did not have any mental or physical problems that limited their ability to understand what was happening; (6) the defendants had not been known by any names different than those charged in the indictment; (7) the defendants understood their right to appointed counsel if they could not afford an attorney; (8) the defendants were satisfied with their attorneys; (9) the defendants understood their right to a jury trial and the presumption of innocence; and (10) the defendants understood that pleading guilty waived their right to a jury trial.
The judge then addressed the defendants individually. When he reached Garcia-Luna’s case, he asked the Assistant United States Attorney (AUSA) to present the court with the “factual basis” of the charge. The AUSA described the circumstances of Garcia-Luna’s arrest, and informed the court that Garcia-Luna had a prior aggravated felony conviction for the sale of cocaine. The court confirmed the existence of the conviction with Garcia-Luna and then confirmed that he understood, because he was an aggravated felon, the maximum sentence he faced. Finally, the court asked whether Garcia-Luna would like to say anything about the charge. Garcia-Luna answered with: “Everything that is being said has already been given to my attorney.” The court then found him guilty.[1]

2. The May 23 Hearing

On May 23, 2000, Lujano-Perez, Mata-Ortiz, and Torres-Rodriguez, along with two other defendants unrelated to this case, appeared and participated in a rear-raignment hearing before the same district court. The judge again began by addressing the whole group. First, he told the group that if they could not understand the proceedings, they needed to let him know. He also reminded them that, even though they were before the court as a group, they had the right to an individual audience with their counsel, and explained that they could ask the court questions about their case.
*223 While still addressing the entire group, the judge then confirmed that (1) the defendants wished to plead guilty; (2) the defendants understood they were under oath; (3) the defendants had not failed to disclose that they had been known by any names different than those charged in the indictment; (4) the defendants’ pleas were not the result of threats; (5) the defendants did not have any medical or psychological problems that limited their ability to understand what was happening; (6) the defendants understood their right to appointed counsel if they could not afford an attorney; (7) the defendants were satisfied with their attorneys; (8) the defendants understood their right to a jury trial and the presumption of innocence; and (9) the defendants understood that pleading guilty waived their right to a jury trial.
The judge then addressed the defendants individually. Beginning with Torres-Rodriguez’s case, he asked the AUSA for the factual basis of the charge. The AUSA described the circumstances of Torres-Rodriguez’s arrest, and informed the court that he had several prior misdemeanor convictions and possibly an arrest for Burglary of a Habitation. The court asked Torres-Rodriguez if, aside from the allegations of previous misconduct, the rest of the AUSA’s statement was correct. Torres-Rodriguez replied: “Yes, but I didn’t do anything.” The court again asked, and Torres-Rodriguez confirmed, that he had returned to the United States without permission after being deported. Because the AUSA was unsure about Torres-Rodriguez’s criminal history, it advised the court that he should be admonished about the maximum penalty range for a convicted aggregated felon. The court confirmed he understood the punishment range and then found him guilty.[2]
Next, the court addressed Mata-Ortiz. At the court’s request, the AUSA gave a brief factual statement about his arrest and informed the court that he had prior convictions for Aggravated Assault and Murder. The judge confirmed with Mata-Ortiz that the factual statement was correct and that he understood the maximum possible sentence. The court then found him guilty.[3]
Finally, the court addressed Lujano-Perez. The AUSA gave a brief factual statement about the circumstances of Lu-jano-Perez’s arrest, and informed the court that he had been convicted of Battery prior to his deportation. The court confirmed that Lujano-Perez understood the possible maximum penalty, and then found him guilty.[4]
II. RULE 11
Rule 11 of the Federal Rules of Criminal Procedure governs pleas. And it sets forth the procedures the court must follow before accepting a plea of guilty or nolo contendere. Specifically, the court must address the defendant personally in open court to explain, and ascertain that the defendant understands, certain information and rights: the nature of the charge; the mandatary minimum and maximum penalties (including any special parole or supervised release term); the fact that the *224 court is required to consider sentencing guidelines, but may depart from them under some circumstances; the court’s ability to order restitution to victims (when applicable); the defendant’s right to an attorney at every stage of the proceeding (and the right to have one appointed, if necessary); the defendant’s right to plead not guilty;' the defendant’s right to a jury trial; the defendant’s right at trial to assistance of counsel, to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; that pleading guilty waives the right to trial; that answers related to the plea, given to the court under oath, can be the subject of a perjury charge; and the terms of any agreement waiving the right to appeal or collaterally attack the sentence. The court must also address the defendant personally in open court to determine that the plea is voluntary and not the result of threats or coercion. Finally, the court is required to ask whether the plea is the result of negotiations with the government’s attorney. The court may not accept a guilty plea unless it determines, after inquiry, that there is an adequate “factual basis” for the plea.
Any variance from these procedures is subject to a harmless-error analysis, Fed. R.Crim. Proc. 11(h), and we review such challenges de novo. United States v. Cuevas-Andrade, 232 F.3d 440, 443 (5th Cir.2000). Specifically, we look to whether (1) the trial court failed to comply with the rule, and (2) if so, whether this noncompliance affected the defendant’s substantial rights such that “knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty.” United States v. Johnson, 1 F.3d 296, 302 (5th Cir.1993) (en banc).
III. ANALYSIS
Here, there is no dispute that the trial court did not comply with Rule 11. The record reflects that the court failed to: address the defendants personally in open court; explain the nature of the charge; explain the effect of any supervised release term; explain that the court was .required to consider applicable sentencing guidelines, but could depart from those in certain circumstances; explain the defendants’ right to plead not guilty; explain the defendants’ right to be tried by a jury; explain that at trial the defendants had the right to an attorney; inform the defendants of their right against self incrimination at their trial; address each defendant personally to ascertain that his plea was not the result of threats or coercion; and inquire whether the defendants’ guilty pleas were the result of negotiations or discussions with the government.
The defendants limit their complaints here to the trial court’s failure to explain: the nature of the charge; the right to plead not guilty; the right to a jury trial; the right to counsel at trial; and the right against compelled self incrimination. Accordingly, any complaints about the other variations are waived. See Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir.1993).

The Nature of the Charge

Rule ll’s requirement that defendants understand the “nature of the charge” against them refers to the elements of the offense. United States v. Calderon, 243 F.3d 587, 589 (2d Cir.2001). Here, the record reflects that the elements of 8 U.S.C. § 1326, the statute the defendants were charged with violating, were never discussed during the plea hearings. Further, the indictment was not read, and there were no written plea agreements. Nonetheless, the government asserts that its recital of the “factual basis,” along with *225 the fact that the charge is simple and easy to understand, renders the court’s failure to explain the nature of the charge harmless error. We disagree.
This Circuit has never found that recitation of a “factual basis,” which is a distinct and separate requirement under Rule 11, obliterated the need to ensure that a defendant understands the nature of the charge. Rather, in every case where we have found the failure to explain the nature of the charge to be harmless, there has been evidence, other than recitation of the factual basis, indicating that the defendant understood the nature of the charge. See, e.g., Cuevas-Andrade, 232 F.3d at 444 (holding failure to explain nature of charge harmless because the indictment was read to the defendant, the defendant signed a written plea agreement listing the elements of the charge, and the defendant’s attorney reviewed the charges with the defendant); United States v. Smith, 184 F.3d 415, 417 (5th Cir.1999) (holding failure to explain nature of charge harmless because the indictment was read to the defendant, and her attorney stated that he had reviewed the indictment and charges with her and that she understood them and voluntary pleaded guilty); United States v. Reyna, 130 F.3d 104, 111 (5th Cir.1997) (holding failure to explain nature of charge harmless because the indictment was read to the defendant, the defendant stated he understood the charges, and the court asked the defendant several questions about his understanding of the nature of the offense); United States v. Guichard, 779 F.2d 1139, 1145-46 (5th Cir.1986) (holding failure to explain nature of charge harmless because the indictment was read to the defendant, the defendant stated he had discussed charges with his attorney, and the court inquired about the defendant’s understanding of the charge).
In support of its argument, the government relies almost exclusively on one First Circuit case. United States v. Martinez-Martinez, 69 F.3d 1215 (1st Cir.1995). In Martinez-Martinez, the court noted that the trial court’s failure to explain the nature of the charges “stretched the outer boundaries of Rule ll’s express mandate,” but, nonetheless, it found the failure to be harmless error. Id. at 1222. It explained that “[rjather than exalting form over substance, on appeal we employ a ‘totality of the circumstances’ test to determine if a core violation has indeed occurred.” Id. at 1220.
The government here emphasizes the Martinez-Martinez court’s statement that “[i]f, during the plea colloquy, the government’s statement or the defendant’s own version of the facts sets forth all elements and conduct of the offense, admission to that conduct sufficiently establishes the defendant’s understanding of the charge.” Id. at 1220. However, a closer look at the case shows that, even though the court stated that recitation of a factual basis was enough to render the failure to explain the charge harmless, the court did not rely solely on this fact. Rather, the court emphasized that (1) Martinez acknowledged twice during the plea hearing that she had discussed the charges with her counsel and understood them, (2) she waited to plead guilty until the day of trial (after months of trial preparation), (3) she signed a written plea agreement, and (4) the court did ask her if she had read'the charges and consulted with her counsel about them. Id. at 1221-22.
Here, in contrast with the facts in Martinez-Martinez, it is undisputed that neither the judge nor the prosecutor described the elements of the charge; the indictment was not read; and the judge did not ask the defendants whether they understood the charges. Thus, none of the *226 safeguards were in place that we have in the past held might render a judge’s failure to personally apprise the defendant of the nature of the charge nonetheless harmless. Accordingly, the sole basis for us to find harmless error would be that the AUSA recited the factual basis for the charges.
However, Rule 11 requires both that the judge explain the nature of the charge, Fed.R.CRImP. 11(c)(1), and that the judge ascertain that there is a factual basis for the charge. Fed. R.Crim. P. 11(f). Consequently, if we were to hold, as the government urges us to, that wholly failing to admonish defendants of the nature of the charge is harmless whenever the trial court establishes a factual basis, we would, in essence, obliterate the need to ever comply with Rule ll’s express requirement that the court explain the nature of the charge. This we decline to do. Accordingly, we hold that the trial court’s failure to admonish the defendants of the nature of the charge was harmful error.[5]
We also take this opportunity to reiterate that, although noncompliance with Rule 11 is subject to harmless-error review, the importance of adhering to all Rule ll’s requirements cannot be overstated. Indeed, when the harmless-error subdivision (h) was added to Rule 11, the Advisory Committee cautioned that:
[Subdivision (h) should not be read as an invitation to trial judges to take a more casual approach to Rule 11 proceedings. It is still true, as the Supreme Court pointed out in McCarthy, that thoughtful and careful compliance with Rule 11 best serves the cause of fair and efficient administration of criminal justice, as it “will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.”
Fed.R.Crim.P. 11 (advisory committee’s notes to 1983 amendment) (quoting McCarthy, 394 U.S. at 472, 89 S.Ct. 1166).
IV. CONCLUSION
Because our conclusion that the trial court’s failure to explain the nature of the charge mandates reversal, we need not reach the defendants’ contention that other portions of the plea colloquy were also deficient. The conviction and sentence of each defendant is vacated and remanded to the trial court for further proceedings consistent with this opinion.

. He was sentenced to 48 months' incarceration al a separate sentencing hearing on August 10, 2000.

.At a sentencing hearing on August 14, 2000, the existence of a prior conviction for cocaine possession was confirmed, and he was sentenced to 46 months' incarceration for illegal reentry. The court also revoked his probation that he was serving for another offense and ordered him to serve an additional 3 months, to run consecutive to his 46-month sentence.

. At a sentencing hearing on August 9, 2000, he was sentenced to 57 months’ incarceration.

. At a sentencing hearing on August 9, 2000, he was sentenced to 70 months' incarceration.

. We note that this result is consistent with the Advisory Committee Notes to Rule 11, which state that:
There would not be harmless error under subdivision (h) where, for example, as in McCarthy, there had been absolutely no inquiry by the judge into defendant's understanding of the nature of the charge and the harmless error claim of the government rests upon nothing more than the assertion that it may be "assumed" defendant possessed such understanding merely because he expressed a desire to plead guilty.
Fed.R.Crim.P. 11 (advisory committee's notes to 1983 amendment) (citing McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)).