William Kenney v. USA                    CV-97-603-B    09/07/00

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**William Kenney**

   **v.**                                      Civil No. 97-603-B
                                               Opinion No. 2000 DNH 191
**United States of America**


### MEMORANDUM AND ORDER


William Kenney seeks a new trial pursuant to 28 U.S.C.

§ 2255.  For the reasons that I discuss in this order, I dismiss

one of Kenney's ineffective assistance of counsel claims, and I

direct the clerk to schedule an evidentiary hearing on Kenney's

remaining claims.


### I.    BACKGROUND

Kenney and two co-conspirators, Charles Flynn and Gary Neal,

were convicted of multiple felony counts following a 32-day

trial.  The charges against them and the evidence that the

government produced to support the charges are summarized in the

district court's order denying Kenney's motion for a new trial,

see United States v. Flynn, Cr. no. 92-018-01, Doc. no. 294 (February 4, 1993), and the First Circuit's opinions rejecting his appeal, see United States v. Neal, 36 F.3d 1190 (1st Cir. 1994), reh'g denied by United States v. Neal, 105 F.3d 1 (1st Cir. 1996).

Kenney filed his initial § 2255 motion on December 1, 1997. See Mot. to Vacate (Doc. no. 1). He filed an amended motion on April 18, 1999, asserting 11 claims that the government failed to disclose exculpatory evidence in violation of his rights under Brady v. Maryland, 373 U.S. 83 (1963), and two claims that he was denied his Sixth Amendment right to effective assistance of counsel. See Mot. to Vacate (Doc. no. 22). I disposed of six of Kenney's Brady claims in an April 20, 1999 order because I determined that he could not satisfy the "cause and prejudice" test that applies to § 2255 claims that a defendant has not raised on direct appeal. See Order (Doc. no. 23). I was unable, however, to resolve Kenney's remaining claims because I determined that the government had not satisfactorily addressed the claims in its initial objection. See id.

Because the government's supplemental response to Kenney's remaining claims also proved unsatisfactory, I directed the government to file a third memorandum "divided into separate sections corresponding to Kenney's remaining claims." Order (Doc. no. 37) at 2. I further directed the government to "describe [each] claim under consideration, identify the legal theory or theories the government relies on to challenge the claim, cite the precedent the government relies on to support its theory or theories, and describe the facts that support its position with supporting citations to the record." Id. Kenney's amended petition and the government's response are now before me for review.

## II.   ANALYSIS

Kenney asserts that the government violated his Brady rights by withholding exculpatory evidence demonstrating:

(1)  that one of the government's principle witnesses, co-conspirator Richard Ferguson, falsely testified that he had refrained from all criminal activity (other than selling

narcotics) from the time he was released from prison in 1986 until he met with co-defendant Flynn in March 1991, Mot. to Vacate (Doc. no. 22) at ¶ 12 A(7);

(2) that Ferguson had told the government that another co-conspirator, Thomas McQueeny, rather than Flynn, had set up the robberies, id. at ¶ 12 B(1);

(3) that someone other than Kenney and his alleged co-conspirators was once considered by the police to be a "key suspect" in one of the robberies for which Kenney was convicted, id. at ¶ 12 B(2);

(4) that someone other than Kenney and his alleged co-conspirators had cashed personal checks that had been stolen in one of the robberies for which Kenney was convicted, id. at ¶ 12 B(3);

(5) that the police had obtained the search warrants using affidavits containing factual assertions that are inconsistent with the government's trial evidence, id. at ¶ 12 B(4); and

(6) that the police had obtained evidence when executing the above-mentioned search warrants that implicated Richard

Ferguson in one of the robberies rather than Kenney, <u>id.</u>

Kenney also asserts that he was denied his Sixth Amendment right to the effective assistance of counsel because his attorney:

(1)  failed to properly cross-examine two bank tellers who were present when one of the robberies occurred, <u>id.</u> at ¶ 12 C(2); and

(2)  failed to object at sentencing to the court's use of a version of the sentencing guidelines that was not in effect when Kenney committed the crimes at issue, <u>id.</u> at ¶ 12 C(1).

I address each group of claims in turn.

## A.  <u>Brady Claims</u>

I cannot resolve Kenney's <u>Brady</u> claims because the government has again failed to provide me with an acceptable brief addressing Kenney's claims.  Despite my explicit instruction to file an additional brief directly addressing Kenney's unresolved <u>Brady</u> claims, the government has chosen to respond only to Kenney's ineffective assistance of counsel claims.  Accordingly, I direct the clerk to appoint counsel for

Kenney and to schedule an evidentiary hearing with respect to Kenney's unresolved <u>Brady</u> claims. I will attempt to determine at the evidentiary hearing: (1) whether Kenney can demonstrate "cause and prejudice" for his failure to raise his claims on direct appeal; (2) whether the allegedly exculpatory evidence exists; (3) whether the evidence is exculpatory; and (4) whether it was ever in the government's possession.

**B.     Ineffective Assistance of Counsel Claims**

### 1.   Inadequate Cross-Examination

Kenney claims that his attorney was ineffective because he failed to question two bank employees about their testimony that one of the robbers had referred to the other as "Tommy." Kenney suggests that his attorney should have vigorously pursued this testimony on cross-examination because it casts doubt on other evidence produced during the trial suggesting that Kenney was the robber referred to as "Tommy."

I cannot overturn a conviction because of ineffective assistance of counsel unless "(1) 'counsel's performance was deficient,' that is 'counsel made errors so serious that counsel

-6-

was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment;' and (2) 'the deficient performance prejudiced the defense,' that is 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" United States v. Derman, 211 F.3d 175, 184 (1st Cir. 2000) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

Applying the ineffective assistance of counsel standard, I conclude that Kenney's counsel's failure to cross-examine the bank employees about the reference to "Tommy" does not represent the kind of serious error that is necessary to support an ineffective assistance of counsel claim. Defense counsel aggressively and effectively cross-examined both bank employees concerning their inability to place Kenney at the scene of the robbery. Since the government produced substantial evidence during the trial that the defendant and his co-conspirators went to great lengths to keep their identities secret and even used aliases on multiple occasions, counsel's failure to examine the bank employees about the "Tommy" reference is not the kind of

serious error that is required to support an ineffective assistance of counsel claim.

2. <u>Sentencing Errors</u>

Kenney also asserts that his attorney rendered ineffective assistance at the sentencing hearing because he failed "to object to the improper application of the November 1, 1992 version of the United States Sentencing Guidelines, which qualified the defendant as a Career Offender and enhanced his sentence." Mot. to Vacate (Doc. no. 22) at ¶ 12 C(1). Specifically, Kenney asserts that the court erroneously based its career offender classification on two prior convictions that had been consolidated for purposes of sentencing, but which were separated by an intervening arrest. <u>See</u> <u>id.</u> Kenney contends that this was improper because the Sentencing Commission did not amend the commentary to the sentencing guidelines to provide that such convictions should be treated as separate convictions until November 1, 1991, some three weeks after the last robbery occurred. <u>See</u> <u>id.</u>

-8-

The government urges me to reject Kenney's argument because it claims that the defendant "was not sentenced as a career criminal, pursuant to the instructions of the sentencing guidelines manual, as he claims. He was sentenced as an armed career criminal as a result of his conviction for violation of 18 U.S.C. § 922(q) and § 924(e)(1), which mandated a fifteen year sentence of imprisonment." Gov't's Opp'n to Pet'r's Mot. to Vacate (Doc. no. 38) at 16. I reject the government's argument because it is inconsistent with Kenney's presentence report, see Presentence Investigation Report at 15, para. 76 (March 11, 1993), the sentencing hearing transcript, see Transcript at 143 (March 15, 1993), and the memorandum Judge Devine prepared and attached to the judgment, see United States v. Kenney, Cr. no. 92-018-03, J. Attach. Order at 4-5, Doc. no. 332, (March 19, 1993), all of which clearly state that Kenney was being sentenced as a career offender. Since the government has failed to offer a credible argument to undercut Kenney's claim, I will determine whether the claim has merit after holding a hearing on the claim.

### III.    CONCLUSION

For the reasons set forth in this order, I dismiss Kenney's claim that his attorney was ineffective because he failed to properly cross-examine the bank employees.  I direct the clerk to schedule a hearing on his remaining claims and to appoint counsel to represent Kenney at the hearing.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

September 7, 2000

cc:  William Kenney, pro se
     Peter Papps, Esq.