Revised November 30, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 00-40920**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**


**VERSUS**


**ENCARNACION LUJANO-PEREZ,**

**Defendant-Appellant.**

-------------------------------------------------------------------


_____

**No. 00-40924**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**


**VERSUS**


**ANTONIO MATA-ORTIZ,**

**Defendant-Appellant.**

-------------------------------------------------------------------

_____

No. 00-40967

_____


UNITED STATES OF AMERICA,

                                          Plaintiff-Appellee,


                    VERSUS


          JUAN TORRES-RODRIGUEZ,

                                          Defendant-Appellant.

-------------------------------------------------------------------


_____

No. 00-40972

_____


UNITED STATES OF AMERICA,

                                          Plaintiff-Appellee,


                    VERSUS


          JOSE EFRAIN GARCIA-LUNA,

                                          Defendant-Appellant.


_____

Appeals from the United States District Court
     for the Southern District of Texas

November 26, 2001


2

Before JONES, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Encarnacion Lujano-Perez, Antonio Mata-Ortiz, Juan Torres-Rodriguez, and Jose Efrain Garcia-Luna, all Mexican natives and citizens, pleaded guilty to reentering the United States after deportation under 8 U.S.C. § 1326. They each received enhanced sentences because they had each been convicted of an aggravated felony prior to their deportation. 8 U.S.C. § 1326(b). All four here now challenge the voluntariness of their guilty pleas because the trial court did not comply with the admonishment requirements of FED. R. CRIM. P. 11. Because we conclude that the trial court's failure to admonish the defendants of the nature of the charge, as required by Rule 11, was not harmless error, we vacate the conviction and sentence of each defendant and remand these cases for further proceedings consistent with this opinion.

## I. BACKGROUND

Encarnacion Lujano-Perez was deported on April 29, 1999. Without the Attorney General's permission, he reentered the United States on May 2, 1999. Border Patrol agents arrested him in Laredo, Texas, on March 30, 2000, and he was indicted for unlawful reentry on April 18, 2000. Prior to this deportation, Lujano-Perez had been convicted in Florida for Attempted Sexual Battery of a Child.

Antonio Mata-Ortiz was deported on October 12, 1999. Without

3

the Attorney General's permission, he reentered the United States. Border Patrol agents arrested him in Laredo, Texas, on March 26, 2000, and he was indicted for unlawful reentry on April 18, 2000. Prior to his deportation, Mata-Ortiz had been convicted in Denton, Texas, for Aggravated Assault and Murder.

Juan Torres-Rodriguez was deported on June 24, 1999. Without the Attorney General's permission, he reentered the United States on March 29, 2000. Border Patrol agents arrested him in Laredo, Texas, on March 29, 2000, and he was indicted for unlawful reentry on April, 18, 2000. Prior to his deportation, Torres-Rodriguez had been convicted in Palm Beach, Florida, for Cocaine Possession.

Jose Efrain Garcia-Luna was deported on February 12, 2000. Without the Attorney General's permission, he reentered the United States. Border Patrol agents arrested him in El Cenizo, Texas, and he was indicted for unlawful reentry on April 4, 2000. Prior to his deportation, Garcia-Luna had been convicted in Chicago, Illinois, for Delivery of a Controlled Substance.

All four defendants pleaded guilty to violating 8 U.S.C. § 1326(b)'s prohibition on reentering the United States after deportation without permission from the Attorney General. Garcia-Luna was found guilty at a hearing before the district court on May 22, 2000. The other three defendants, Lujano-Perez, Mata-Ortiz, and Torres-Rodriguez, were found guilty at a hearing before the same district court on May 23, 2000.

The defendants each appeal here, arguing that their pleas were

4

rendered involuntary by the district court's failure, at their rearraignment hearings, to properly admonish them of their rights as Rule 11 requires. The government concedes that Rule 11 was not complied with, but nonetheless urges us to affirm the defendants' convictions because the district court's deviation from the rule amounted to harmless error.

### 1. The May 22 Hearing

On May 22, 2000, Garcia-Luna, along with five other defendants unrelated to this case, appeared and participated in a rearraignment hearing before the district court. The judge began by addressing the whole group. First, he told the group that if they could not understand the proceedings, they needed to let him know because silence would be interpreted as understanding.

While still addressing the entire group, the judge then confirmed that (1) the defendants wished to plead guilty; (2) the defendants understood they were under oath; (3) the defendants' pleas were not the result of threats or coercion; (4) the defendants had not taken drugs or alcohol within the prior 24 hours; (5) the defendants did not have any mental or physical problems that limited their ability to understand what was happening; (6) the defendants had not been known by any names different than those charged in the indictment; (7) the defendants understood their right to appointed counsel if they could not afford an attorney; (8) the defendants were satisfied with their

attorneys; (9) the defendants understood their right to a jury trial and the presumption of innocence; and (10) the defendants understood that pleading guilty waived their right to a jury trial.

The judge then addressed the defendants individually. When he reached Garcia-Luna's case, he asked the Assistant United States Attorney (AUSA) to present the court with the "factual basis" of the charge. The AUSA described the circumstances of Garcia-Luna's arrest, and informed the court that Garcia-Luna had a prior aggravated felony conviction for the sale of cocaine. The court confirmed the existence of the conviction with Garcia-Luna and then confirmed that he understood, because he was an aggravated felon, the maximum sentence he faced. Finally, the court asked whether Garcia-Luna would like to say anything about the charge. Garcia-Luna answered with: "Everything that is being said has already been given to my attorney." The court then found him guilty.[1]

### 2. The May 23 Hearing

On May 23, 2000, Lujano-Perez, Mata-Ortiz, and Torres-Rodriguez, along with two other defendants unrelated to this case, appeared and participated in a rearraignment hearing before the same district court. The judge again began by addressing the whole group. First, he told the group that if they could not understand the proceedings, they needed to let him know. He also reminded

---

[1]He was sentenced to 48 months' incarceration at a separate sentencing hearing on August 10, 2000.

6

them that, even though they were before the court as a group, they had the right to an individual audience with their counsel, and explained that they could ask the court questions about their case.

While still addressing the entire group, the judge then confirmed that (1) the defendants wished to plead guilty; (2) the defendants understood they were under oath; (3) the defendants had not failed to disclose that they had been known by any names different than those charged in the indictment; (4) the defendants' pleas were not the result of threats; (5) the defendants did not have any medical or psychological problems that limited their ability to understand what was happening; (6) the defendants understood their right to appointed counsel if they could not afford an attorney; (7) the defendants were satisfied with their attorneys; (8) the defendants understood their right to a jury trial and the presumption of innocence; and (9) the defendants understood that pleading guilty waived their right to a jury trial.

The judge then addressed the defendants individually. Beginning with Torres-Rodriguez's case, he asked the AUSA for the factual basis of the charge. The AUSA described the circumstances of Torres-Rodriguez's arrest, and informed the court that he had several prior misdemeanor convictions and possibly an arrest for Burglary of a Habitation. The court asked Torres-Rodriguez if, aside from the allegations of previous misconduct, the rest of the AUSA's statement was correct. Torres-Rodriguez replied: "Yes, but I didn't do anything." The court again asked, and Torres-Rodriguez

7

confirmed, that he had returned to the United States without permission after being deported. Because the AUSA was unsure about Torres-Rodriguez's criminal history, it advised the court that he should be admonished about the maximum penalty range for a convicted aggregated felon. The court confirmed he understood the punishment range and then found him guilty.[2]

Next, the court addressed Mata-Ortiz. At the court's request, the AUSA gave a brief factual statement about his arrest and informed the court that he had prior convictions for Aggravated Assault and Murder. The judge confirmed with Mata-Ortiz that the factual statement was correct and that he understood the maximum possible sentence. The court then found him guilty.[3]

Finally, the court addressed Lujano-Perez. The AUSA gave a brief factual statement about the circumstances of Lujano-Perez's arrest, and informed the court that he had been convicted of Battery prior to his deportation. The court confirmed that Lujano-Perez understood the possible maximum penalty, and then found him guilty.[4]

---

[2]At a sentencing hearing on August 14, 2000, the existence of a prior conviction for cocaine possession was confirmed, and he was sentenced to 46 months' incarceration for illegal reentry. The court also revoked his probation that he was serving for another offense and ordered him to serve an additional 3 months, to run consecutive to his 46-month sentence.

[3]At a sentencing hearing on August 9, 2000, he was sentenced to 57 months' incarceration.

[4] At a sentencing hearing on August 9, 2000, he was sentenced to 70 months' incarceration.

8

## II. RULE 11

Rule 11 of the Federal Rules of Criminal Procedure governs pleas. And it sets forth the procedures the court must follow before accepting a plea of guilty or nolo contendere. Specifically, the court must address the defendant personally in open court to explain, and ascertain that the defendant understands, certain information and rights: the nature of the charge; the mandatary minimum and maximum penalties (including any special parole or supervised release term); the fact that the court is required to consider sentencing guidelines, but may depart from them under some circumstances; the court's ability to order restitution to victims (when applicable); the defendant's right to an attorney at every stage of the proceeding (and the right to have one appointed, if necessary); the defendant's right to plead not guilty; the defendant's right to a jury trial; the defendant's right at trial to assistance of counsel, to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; that pleading guilty waives the right to trial; that answers related to the plea, given to the court under oath, can be the subject of a perjury charge; and the terms of any agreement waiving the right to appeal or collaterally attack the sentence. The court must also address the defendant personally in open court to determine that the plea is voluntary and not the result of threats or coercion. Finally, the court is required to ask whether the plea is the result of negotiations with the government's

9

attorney.  The court may not accept a guilty plea unless it determines, after inquiry, that there is an adequate "factual basis" for the plea.

Any variance from these procedures is subject to a harmless-error analysis, FED. R. CRIM. PROC. 11(h), and we review such challenges *de novo*.  **United States v. Cuevas-Andrade**, 232 F.3d 440, 443 (5th Cir. 2000).  Specifically, we look to whether (1) the trial court failed to comply with the rule, and (2) if so, whether this noncompliance affected the defendant's substantial rights such that "knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty."  **United States v. Johnson**, 1 F.3d 296, 302 (5th Cir. 1993) (en banc).

### III.  ANALYSIS

Here, there is no dispute that the trial court did not comply with Rule 11.  The record reflects that the court failed to: address the defendants personally in open court; explain the nature of the charge; explain the effect of any supervised release term; explain that the court was required to consider applicable sentencing guidelines, but could depart from those in certain circumstances; explain the defendants' right to plead not guilty; explain the defendants' right to be tried by a jury; explain that at trial the defendants had the right to an attorney; inform the

10

defendants of their right against self incrimination at their trial; address each defendant personally to ascertain that his plea was not the result of threats or coercion; and inquire whether the defendants' guilty pleas were the result of negotiations or discussions with the government.

The defendants limit their complaints here to the trial court's failure to explain: the nature of the charge; the right to plead not guilty; the right to a jury trial; the right to counsel at trial; and the right against compelled self incrimination. Accordingly, any complaints about the other variations are waived. *See* **Yohey v. Collins**, 985 F.2d 222, 224-25 (5th Cir. 1993).

### The Nature of the Charge

Rule 11's requirement that defendants understand the "nature of the charge" against them refers to the elements of the offense. **United States v. Calderon**, 243 F.3d 587, 589 (5th Cir. 2001). Here, the record reflects that the elements of 8 U.S.C. § 1326, the statute the defendants were charged with violating, were never discussed during the plea hearings. Further, the indictment was not read, and there were no written plea agreements. Nonetheless, the government asserts that its recital of the "factual basis," along with the fact that the charge is simple and easy to understand, renders the court's failure to explain the nature of the charge harmless error. We disagree.

This Circuit has never found that recitation of a "factual

11

basis," which is a distinct and separate requirement under Rule 11, obliterated the need to ensure that a defendant understands the nature of the charge. Rather, in every case where we have found the failure to explain the nature of the charge to be harmless, there has been evidence, other than recitation of the factual basis, indicating that the defendant understood the nature of the charge. *See, e.g.,* **Cuevas-Andrade**, 232 F.3d at 444 (holding failure to explain nature of charge harmless because the indictment was read to the defendant, the defendant signed a written plea agreement listing the elements of the charge, and the defendant's attorney reviewed the charges with the defendant); **United States v. Smith**, 184 F.3d 415, 417 (5th Cir. 1999) (holding failure to explain nature of charge harmless because the indictment was read to the defendant, and her attorney stated that he had reviewed the indictment and charges with her and that she understood them and voluntary pleaded guilty); **United States v. Reyna**, 130 F.3d 104, 111 (5th Cir. 1997) (holding failure to explain nature of charge harmless because the indictment was read to the defendant, the defendant stated he understood the charges, and the court asked the defendant several questions about his understanding of the nature of the offense); **United States v. Guichard**, 779 F.2d 1139, 1145-46 (5th Cir. 1986) (holding failure to explain nature of charge harmless because the indictment was read to the defendant, the defendant stated he had discussed charges with his attorney, and

12

the court inquired about the defendant's understanding of the charge).

In support of its argument, the government relies almost exclusively on one First Circuit case. *United States v. Martinez-Martinez*, 69 F.3d 1215 (1st Cir. 1995). In *Martinez*, the court noted that the trial court's failure to explain the nature of the charges "stretched the outer boundaries of Rule 11's express mandate," but, nonetheless, it found the failure to be harmless error. *Id.* at 1222. It explained that "[r]ather than exalting form over substance, on appeal we employ a 'totality of the circumstances' test to determine if a core violation has indeed occurred." *Id.* at 1220.

The government here emphasizes the *Martinez* court's statement that "[i]f, during the plea colloquy, the government's statement or the defendant's own version of the facts sets forth all elements and conduct of the offense, admission to that conduct sufficiently establishes the defendant's understanding of the charge." *Id.* at 1220. However, a closer look at the case shows that, even though the court stated that recitation of a factual basis was enough to render the failure to explain the charge harmless, the court did not rely solely on this fact. Rather, the court emphasized that (1) Martinez acknowledged twice during the plea hearing that she had discussed the charges with her counsel and understood them, (2) she waited to plead guilty until the day of trial (after months of

13

trial preparation), (3) she signed a written plea agreement, and (4) the court did ask her if she had read the charges and consulted with her counsel about them. *Id*. at 1221-22.

Here, in contrast with the facts in **Martinez**, it is undisputed that neither the judge nor the prosecutor described the elements of the charge; the indictment was not read; and the judge did not ask the defendants whether they understood the charges. Thus, none of the safeguards were in place that we have in the past held might render a judge's failure to personally apprise the defendant of the nature of the charge nonetheless harmless. Accordingly, the *sole* basis for us to find harmless error would be that the AUSA recited the factual basis for the charges.

However, Rule 11 requires *both* that the judge explain the nature of the charge, FED. R. CRIM. P. 11(c)(1), and that the judge ascertain that there is a factual basis for the charge. FED. R. CRIM. P. 11(f). Consequently, if we were to hold, as the government urges us to, that wholly failing to admonish defendants of the nature of the charge is harmless whenever the trial court establishes a factual basis, we would, in essence, obliterate the need to ever comply with Rule 11's express requirement that the court explain the nature of the charge. This we decline to do. Accordingly, we hold that the trial court's failure to admonish the

defendants of the nature of the charge was harmful error.[5]

We also take this opportunity to reiterate that, although noncompliance with Rule 11 is subject to harmless-error review, the importance of adhering to *all* Rule 11's requirements cannot be overstated. Indeed, when the harmless-error subdivision (h) was added to Rule 11, the Advisory Committee cautioned that:

> [S]ubdivision (h) should *not* be read as an invitation to trial judges to take a more casual approach to Rule 11 proceedings. It is still true, as the Supreme Court pointed out in **McCarthy**, that thoughtful and careful compliance with Rule 11 best serves the cause of fair and efficient administration of criminal justice, as it "will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking."

FED. R. CRIM. P. 11 (advisory committee's notes to 1983 amendment)

---

[5] We note that this result is consistent with the Advisory Committee Notes to Rule 11, which state that:

> There would *not* be harmless error under subdivision (h) where, for example, as in **McCarthy**, there had been absolutely no inquiry by the judge into defendant's understanding of the nature of the charge and the harmless error claim of the government rests upon nothing more than the assertion that it may be "assumed" defendant possessed such understanding merely because he expressed a desire to plead guilty.

FED. R. CRIM. P. 11 (advisory committee's notes to 1983 amendment) (citing **McCarthy v. United States**, 394 U.S. 459 (1969)).

(quoting **McCarthy**, 394 U.S. at 472).

#### IV. CONCLUSION

Because our conclusion that the trial court's failure to explain the nature of the charge mandates reversal, we need not reach the defendants' contention that other portions of the plea colloquy were also deficient. The conviction and sentence of each defendant is vacated and remanded to the trial court for further proceedings consistent with this opinion.

EDITH H. JONES, dissenting:

With due respect, my colleagues' conclusion that a single technical Rule 11 omission by the district court is not harmless error returns us to the law as it was nine years ago, before this court took Rule 11(h) seriously.[6] Until the en banc decision in United States v. Johnson, 1 F.3d 296-302, (5th Cir. 1993) (en banc), this court evaluated Rule 11 compliance in terms of three "core concerns," the omission of any one of which would automatically result in the vacatur of a guilty plea. United States v. Dayton, 604 F.2d 931 (5th Cir. 1979) (en banc). One of Dayton's "core concerns," the one at issue here, was that the court must address a defendant concerning the nature of the charge against him. Fed. Crim. Rule Proc. 11(c)(1). Johnson involved another of the core concerns, but this court rejected Dayton's per se approach in favor of the harmless error analysis specified by Rule 11(h). The Johnson test, given lip service by the majority, identifies reversible Rule 11 error only if the court's non-compliance affected the defendant's substantial rights such that his "knowledge and comprehension of the full and correct information would

---

[6] Appellants also complain that the district court omitted from its guilty plea advice other information required by Rule 11, e.g. the defendant's right to plead not guilty and proceed to a jury trial, to counsel at trial, to confront witnesses, and not to incriminate himself. The majority do not discuss these omissions. I would find them insufficient to overturn the guilty plea, based on the whole record and the analysis in United States v. Cuevas-Andrade, 232 F.3d 440 (5th Cir. 2000).

17

have been likely to affect his willingness to plead guilty." 1 F.3d at 302.

The majority opinion dwells on the trial court's admitted non-compliance with Rule 11, but it never discusses how the appellants' substantial rights were violated by the court's failure to read them their indictments or otherwise explain the charge of illegal reentry. 18 U.S.C. § 1326. There is no basis in the record for a conclusion that, had appellants been specifically informed at the plea colloquy of the nature of a § 1326 violation, they would not have pled guilty and would have insisted on going to trial.

The majority assert that the "sole" basis for a finding of harmless error is the Assistant U.S. Attorney's recitation of the factual basis of the charge at the guilty plea colloquy. This assertion suffers from two flaws. It misstates Johnson, which holds that the entire trial court record must be consulted to evaluate the effect of a Rule 11 error. 1 F.3d at 302. It also misapprehends the record. These appellants certainly knew what charge they were pleading guilty to.

The crime of illegal reentry is not recondite. It consists of a person's being found in the United States without the permission of the Attorney General after having been previously deported. All four appellants responded affirmatively to the court's introductory query whether they wished to plead guilty. The factual resumés recited by an AUSA at the court's request embody the simple elements of a § 1326 violation for each appellant.

18

As to Garcia-Luna, the AUSA stated:

> Mr. Garcia Luna is a native and citizen of Mexico, Your Honor. He was encountered by Border Patrol wading the – or crossing the Rio Grande River at a location near El Cenizo, Texas, at about 10:00 in the morning on March the 9th, 2000, entering without immigration inspection. He has – records show that he has been previously deported from Laredo on February the 12th, 2000. He has – records show that he has not applied for or received permission from the attorney general to re-enter the United States. We believe Mr. Garcia is an aggravated felon. His criminal history includes a 1995 conviction for sale of cocaine. He was sentenced to 12 years in that offense.

Garcia-Luna admitted his crime in the plea colloquy.

The facts pertaining to Torres-Rodriguez, as recited by the AUSA, are as follows:

> The defendant is a citizen and national of Mexico. On March 29th of this year he was apprehended by Border Patrol at the river banks here in Laredo, Texas. He had just crossed. On June 24, 1999, he was deported back to Mexico through Laredo. This was subsequent to several misdemeanor convictions for theft out of Travis County. It also appears that he was arrested for a burglary of a habitation. I don't know what has happened with that case, Your Honor. I can't tell from my file. He has not received permission to re-enter or reapply for readmission to enter the United States from the attorney general.

Torres admitted that the factual basis was true.

The factual basis for Mata was given by the government:

> His true name, Your Honor, is Turruviartez-Sanchez. He is a native and citizen of the Republic of Mexico. He was apprehended by Border Patrol agents performing line-watch duty near Laredo Community College on the 26th of March of this year at about 10:00 p.m. just at the time of this entry. He was previously deported through Laredo on the 12th of October of 1999. And he had neither applied for nor received permission of the attorney general to re-enter after deportation.
>
> We believe he qualifies as an aggravated felon. His criminal history includes a 1992 aggravated assault and a

19

1995 murder intending serious bodily injury for which he served time in the Texas Department of Criminal Justice Institution.

Mata admitted the truth of the facts concerning his reentry.

The Government gave the following factual basis for Lujano-Perez:

Mr. Lujano-Perez is also a native and citizen of the Republic of Mexico, Your Honor. He was apprehended on the 30th of March of this year at 11:00 p.m. by Border Patrol agents. They were following up on a tip that the defendant was an illegal alien living in the Santa Fe subdivision of Laredo, Texas, and working at a restaurant called Las Asadas. <u>He confirmed his illegal status and admitted he had last entered the United States on the 2nd of May of 1999 by making a false claim of United States citizenship</u> at the port of entry, bridge number two, here in Laredo. He was last deported on the 29th of April through Laredo and has neither applied for nor received permission of the attorney general to re-enter after that deportation. [emphasis added.]

We do believe he qualifies as an aggravated felon. His criminal history includes a battery for which he received a 15-year sentence and a number of prior crimes for which the dispositions are not known by the investigating officers.

Lujano acknowledged the truth of the facts regarding his illegal entry. Based on the simplicity of the charge, and the appellants' understanding, emphasized by the court, that they could seek clarification at any time, it is a close question whether these factual resumés alone sufficiently identified the nature of the charge. This court has noted that, "[n]either Rule 11 nor the case law specifies the minimum that the district court must do to 'inform the defendant . . . of the nature of the charge'". <u>United States v. Reyna</u>, 130 F.3d 104, 110 (5th Cir. 1997).

20

The record is rife with additional confirmation of the appellants' knowing intent to plead guilty to the crime with which they were charged. All of the appellants were represented by the Federal Public Defender. This court should be able to rely on the public defender's expertise in advising their clients. We should assume that where, as here, each defendant admitted to the judge that he committed the acts that form the basis of an illegal re-entry, he did so on the advice of competent counsel. None of the defendants raised a peep when the court asked if they were satisfied with their counsel and if they were under any compulsion to plead guilty. In fact, defense counsel raised no objections to the factual resumés recited by the AUSA's, to the clients' assent to the resumés, or to the crime summaries contained in each appellant's PSR. No defense counsel called the trial court's attention to its omissions from the precise Rule 11 "script." More to the point, no defense counsel moved in the trial court to withdraw his client's guilty plea on the basis of ignorance or involuntariness.

Finally, each of the defendants appended an explicit admission of guilt to his PSR in order to qualify for a 3-level reduction in the sentencing guidelines, a reduction granted by the court.[7] Since none of the defendants received anywhere near the

---

[7] One example of these statements was executed on behalf of Lujano-Perez:

I, Encarnacion Lujano-Perez, admit that I am an alien that entered the United States without obtaining permission from the Attorney General of the United States. I admit that I was

21

maximum 20-year statutory sentence for his admitted offense, and all were sentenced at the bottom of the guidelines range, there is no objective basis for dissatisfaction with the outcome of the prosecution. Indeed, it cannot be emphasized too strongly that none of the appellants contends he would have insisted on going to trial if he had been explicitly informed by the court of the "nature" of a section 1326 charge.

Rather than examine the objective circumstances surrounding the trial court's errors, the majority express fear that allowing the factual resumé to fulfill the function of the nature-of-charge explanation will "obliterate" a particular requirement of Rule 11. But their holding threatens to "obliterate" Rule 11(h) and the <u>Johnson</u> harmless error test: harmless error comes into play whenever a trial court has "obliterated" some facet of Rule 11.

The majority suggest in a footnote that their analysis comports with the Advisory Committee Notes to Rule 11, which eschew a harmless error claim where "the government rests upon nothing more than the assertion that it may be 'assumed' defendant possessed such understanding [of the charge against him] merely because he expressed a desire to plead guilty." Majority Opn. at n.5, citing Fed. R. Crim. P. 11 (advisory committee notes to 1983 amendment). But as has been

deported before I re-entered the United States. I was found by a U.S. Border Patrol Agent in Laredo, Texas.

And at sentencing, Garcia-Luna apologized for having "entered illegally into the country."

22

demonstrated, the government does not rely solely on these appellants' expressed desire to plead guilty, but upon many other indicia of their knowledge and understanding that they committed the federal crime of illegal re-entry. The same Advisory Committee Notes also caution that Rule 11 does not prescribe a "litany or other ritual which can be carried out only by word-for-word adherence to a set 'script.'" Id. See also United States v. Henry, 113 F.3d 37, 41 (5th Cir 1997) (Rule 11 does not require ritual adherence to its precise contours for a guilty plea to be upheld.)

This court has frequently addressed the sufficiency of Rule 11 colloquies following Johnson. In a few decisions, we have found that a defendant's substantial rights were violated by errors such as serious, prejudicial misinformation about the punishment range or the omission of a minimum prison term.[8] No post-Johnson case I have found, published or unpublished, isolates one technical omission and holds it a reversible error without assessing the objective, likely effect on the appellant's willingness to plead guilty in light of the whole trial court record. On the contrary, even a series of technical omissions has been found harmless under the circumstances. United States v. Cuevas-Andrade, 232 F.3d 440 (5th Cir. 2000). And in United States v. Vasquez-Bernal, 197 F.3d 169 (5th Cir. 1999), where the

_____

[8] See United States v. Herndon, 7 F.3d 55 (5th Cir. 1993); United States v. Whyte, 3 F.3d 129 (5th Cir. 1993); see also United States v. Suarez, 155 F.3d 521 (5th Cir. 19998) (defendant's statement during rearraignment that he was "only guilty of possession" suggested he did not understand that he was charged with possession of cocaine with intent to distribute).

23

trial court failed to expressly advise an illegal re-entrant of the applicable range of punishment, this court held that without proof, or even an allegation, that the omission affected his guilty plea, the Rule 11 complaint was meritless. See also United States v. Moralez-Sosa, 191 F.3d 586, 587-88 (5th Cir. 1999) ("Sosa has never alleged that full compliance with Rule 11 would have affected his decision to plead guilty, nor does the record support such a suggestion.").

The purpose of these appeals is difficult to discern. While I heartily agree that it is better practice for the district court to adhere closely to Rule 11, I also find it inconceivable that these appellants will not plead guilty upon remand. The public defender has made no effort to demonstrate substantial harm to these appellants' rights from the trial court's technical Rule 11 errors. Moreover, we were assured by an AUSA at oral argument that procedures are now in place to advise the district court of omissions in Rule 11 colloquies. As we said in Vasquez-Bernal, "the federal public defender must have better things to do." I respectfully **DISSENT**.